UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
RALPH NATALE, DAVID PEREZ,
DEMOS DEMOPOULOS, JEFFREY ISAACS,
KIRK CONAWAY, and ROY KOHN                    COMPLAINT
as TRUSTEES OF HEALTH FUND 917, and
HEALTH FUND 917,

                    Plaintiffs,                CIVIL ACTION NO.: 18-cv-11404

   -against-

SUPER FUEL CORP. and TIMOTHY BUNYAN,

                    Defendants.
------------------------------------------------------------------x

# C O M P L A I N T

Plaintiffs, Ralph Natale, David Perez, Demos Demopoulos, Jeffrey Isaacs, Kirk Conaway and Roy Kohn, as Trustees of Health Fund 917 (the "Health Fund Trustees" or the "Trustees"), and Health Fund 917 (the "Health Fund" or the "Fund"), by their attorneys, Klein Zelman Rothermel Jacobs & Schess LLP, allege as follows:

## NATURE OF ACTION

1. This action is brought by Plaintiffs pursuant to Sections 404, 406, 502 and 515 of the Employee Retirement Income Security Act of 1974, as amended (hereinafter "ERISA"), 29 U.S.C. §§1104, 1106, 1132 and 1145, to enforce the provisions of the Agreement and Declaration of Trust (the "Trust Agreement") establishing the Health Fund and to enforce the Defendant Super Fuel's obligations to make contributions to the Fund under the terms of the collective bargaining agreement with Coal, Gasoline & Fuel Oil Teamsters, Chauffeurs, Oil Burner Installation, Maintenance, Servicemen and Helpers of New York City and Vicinity,

{00136782;1}

Nassau and Suffolk Counties, New York, Local Union No. 553 (the "Union") and/or Defendants obligations to make contributions to the Fund under the Agreement and Declaration of Trust (the "Trust Agreement") establishing the Fund and the Fund's Delinquent Contribution and Payroll Examination Policy and Procedure (the "Delinquency Procedure").

2. This action is also brought against Defendant Timothy Bunyan ("Bunyan") pursuant to Sections 404 and 406 of ERISA, 29 U.S.C. §§1104 and 1106, for breach of his duties as a fiduciary of the Plaintiff Fund.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to Sections 404, 406, 502 and 515 of ERISA, 29 U.S.C. §§1104, 1106, 1132 and 1145.

4. Venue is proper in this District pursuant to ERISA Section 502(e)(2), 29 U.S.C. §1132(e)(2), because Defendant Corporation is located in Bronx County, New York and Defendant Bunyan resides in Westchester County, New York.

## PARTIES

5. The Health Fund Trustees are fiduciaries of the Health Fund, as defined under ERISA Section 3(21)(A), 29 U.S.C. §1003(21)(A). The Health Fund is an "employee welfare benefit plan" and a "multiemployer plan" within the meaning of ERISA Section 3(1) and (37), 29 U.S.C. §1002(1) and (37), which is maintained for the purpose of providing health and welfare benefits to eligible participants and beneficiaries and is a trust fund established and maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. §186(c)(5) (hereinafter "LMRA"). Plaintiffs bring this action on behalf of the participants and beneficiaries of the Fund.

6. The Fund is administered and maintains its principal place of business at 22 North Tyson Avenue, Floral Park, New York 11001.

7. Upon information and belief Defendant Super Fuel Corp. (hereinafter "Super Fuel") is a corporation organized under the laws of the State of New York with its offices and principal place of business located at 809 East 140th Street, Bronx, New York 10454, and an employer engaged in an industry affecting commerce within the meaning of Section 3(5), (11) and (12) of ERISA, 29 U.S.C. §1102(5), (11) and (12).

8. Upon information and belief, Bunyan is a resident of New York, and was an officer and subsequently owner of Super Fuel.

## BACKGROUND

9. At all times relevant hereto Super Fuel was party to a collective bargaining agreement ("CBA") with the Union.

10. Pursuant to the CBA Super Fuel was required to make contributions to the Health Fund for each of its employees covered by the CBA.

11. Pursuant to the Trust Agreement "[t]itle to all monies accrued, owing, due or paid into the Fund . . . shall constitute plan assets as of the date that their payment is due to the Fund; outstanding and withheld contributions, and any other monies due to the Fund, shall constitute plan assets as of the date that their payment is due to the Fund."

12. In April 2017, the Fund conducted an audit of Super Fuel covering the period of January 1, 2015 through December 31, 2015 (the "2015 Audit Period").  Pursuant to the CBA and by virtue of its participation in the Fund, Super Fuel is also bound to the Trust Agreement establishing the Fund and the Fund's Delinquency Procedure.

13. The 2015 Payroll Audit revealed that Super Fuel underpaid the Fund by $17,958.00 (the "Findings").

14. By letter dated May 8, 2017, the Fund informed Super Fuel about the underpayment and provided it with a copy of the auditor's report. The Fund demanded payment of the Findings plus interest through May 8, 2017, totaling $21,107.21 within 30 days.

15. Upon information and belief, Super Fuel received a copy of the Findings and the Fund's letter demanding payment.

16. Super Fuel provided Defendants with no written objection to the Findings.

17. Super Fuel responded to the Fund's letter asking for additional time to pay.

18. Super Fuel and the Fund previously had entered into payment agreements allowing Super Fuel a period of time over which to pay the delinquent contributions. Super Fuel requested the Fund prepare a payment plan for the amounts detailed in the Fund's demand letter.

19. On July 24, 2017, the Fund sent Super Fuel a Delinquent Contributions Agreement setting forth a schedule for payment of the delinquent contributions and interest.

20. Upon information and belief, Super Fuel received a copy of the proposed payment schedule. Super Fuel neither responded to the Fund nor returned an executed copy of the agreement.

21. The Fund tried to contact Super Fuel about the payment schedule, but received no response.

22. On September 26, 2017, counsel for the Fund sent Defendants a final notice demanding full payment.

23. On October 12, 2017, Bunyan contacted the Fund's counsel, indicating that Super

Fuel would pay the outstanding amount as soon as possible.

24. Bunyan indicated Super Fuel could not presently make payments because, among other reasons, the then owner of Super Fuel, Nicholas G. Panebianco, had died and his Last Will and Testament was being challenged by members of his family.

25. Bunyan represented that following the conclusion of the probate proceedings, he would receive ownership of Super Fuel along with the real property that it possessed.

26. In the owner's Last Will and Testament, Panebianco bequeathed to Bunyan all the shares in Super Fuel, his interest in the premises located at 817 East 140th Street, and $250,000.

27. Bunyan assured counsel for the Fund he would pay the outstanding amount owed once the Last Will and Testament was probated and he was able to sell the business.

28. On December 13, 2017, counsel for the Fund sent Defendants a letter confirming the substance of the October 2017 discussion.

29. Counsel for the Fund further informed Defendants that in addition to the Findings and interest, they also owed the Fund the auditor's fee of $740.

30. As of December 13, 2017, Defendants owed the Fund $22,619.65.

31. Throughout this period, and until January 1, 2018 for one employee and June 8, 2018 for Bunyan, Super Fuel continued to make current contributions to the Fund to maintain their health benefits.

32. On May 10, 2018, counsel for the Fund spoke to Bunyan who stated that he would be receiving $300,000 from the Probate Court shortly to pay amounts owed to the Fund and for fuel oil from Sprague Oil.

33. Defendants failed to pay the outstanding amount owed to the Fund.

34. On June 8, 2018, counsel for the Fund again contacted Bunyan. Bunyan indicated again that he would have the money to pay the Fund by the end of the month.

35. By the end of June 2018, Defendants had not paid the outstanding amount owed to the Fund.

36. On July 21, 2018, counsel for the Fund contacted Bunyan again. Bunyan reaffirmed that he would pay the outstanding amount owed to the Fund and that sale of the business should close soon.

37. On or about August 1, 2018, Bunyan called counsel for the Fund asking for an updated interest calculation on the amount owed. He further represented that he would pay the Fund by mid-August.

38. On September 6, 2018, Bunyan informed counsel for the Fund that he was prepared to pay the outstanding amount due to the Fund.

39. Several hours later, on September 6, 2018, Bunyan informed counsel that he would not be able to make the full payment and offered to pay only $10,000, less than half of the total amount owed. Bunyan acknowledged that other creditors, including those to whom he had given a personal guarantee, had been paid first leaving insufficient funds to pay the Health Fund in full.

40. Plaintiffs declined Defendants' settlement offer, demanding the full amount owed.

41. To date Defendants have not submitted payment of the unpaid contributions set forth in the Findings.

42. To date Defendants have not submitted payment of interest due on the delinquent contributions or the cost of the audit.

## AS AND FOR A FIRST CAUSE OF ACTION

(Against Defendant Super Fuel)

43. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 42 of the Complaint as if fully set forth herein.

44. Section 515 of ERISA, 29 U.S.C. § 1145, requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collective bargaining agreement . . . [to] make such contributions in accordance with the terms and conditions of such plan or such agreement."

45. Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this title or the terms of the plan."

46. Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), requires that "[i]n any action brought by a fiduciary on behalf of a Plan to enforce Section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan-

  (A) the unpaid contributions;
  (B) interest on the unpaid contributions;
  (C) an amount equal to the greater of-
    (i) interest on the unpaid contributions, or
    (ii) liquidated damages . . . in an amount not in
    excess of 20 percent of the [unpaid contributions],
  (D) reasonable attorney's fees and costs of the action, to be paid
    by defendant, and
  (E) such other legal or equitable relief as the court deems appropriate."

47. On May 8, 2017, Plaintiffs sent Defendant Super Fuel a copy of the audit findings together with a demand for payment. Super Fuel has not paid the amounts due.

48. On September 26, 2017, counsel for Plaintiffs sent another demand for payment. Super Fuel has not paid the amounts due.

49. On December 13, 2017, counsel for Plaintiffs again sent Defendants a letter confirming Defendants agreement to pay and the amount due. Super Fuel has not paid the amounts due.

50. Accordingly, Defendants are liable to Plaintiffs under the terms of the Fund's governing documents, the CBA and Sections 505 and 515 of ERISA for the amounts due to the Fund.

## AS AND FOR A SECOND CAUSE OF ACTION

(Against Defendant Bunyan)

51. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 50 as though fully set forth herein.

52. Upon information and belief, during the relevant period Bunyan was a person with discretion and/or authority to pay contributions to the Fund on behalf of Super Fuel.

53. In fact, Bunyan represented multiple times to the Fund and its counsel that the outstanding payments would be made by Super Fuel.

54. Contributions and other monies due and payable to the Fund by Super Fuel are "plan assets" within the meaning of Section 3(21)(a) of ERISA, 29 U.S.C. §1002(21)(a), when they become due.

55. Upon information and belief, Bunyan exercised authority and/or control over payment of contributions and monies due to the Fund from Super Fuel and therefore was a fiduciary as defined in Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

56. Under Section 404(a)(1)(A) of ERISA, 29 U.S.C. §1104(a)(1)(A), an ERISA fiduciary must act solely in the interest of plan participants and beneficiaries.

57. Upon information and belief, Bunyan caused Super Fuel not to pay contributions and other monies to the Fund that had become plan assets of the Fund when they became due from Super Fuel, thus breaching his fiduciary duties under Section 404 of ERISA to act solely in the interest of the Fund's participants and beneficiaries.

58. Pursuant to Section 409 of ERISA; 29 U.S.C. §1109, a fiduciary who breaches any of the responsibilities, obligations or duties imposed on a fiduciary under ERISA is personally liable to a plan for any losses resulting from such breach.

## AS AND FOR A THIRD CAUSE OF ACTION

(Against Defendant Bunyan)

59. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 58 as though fully set forth herein.

60. Pursuant to Section 406(a)(1)(D) of ERISA, 29 U.S.C. §1106(a)(1)(D), a plan fiduciary may not transfer any plan assets to a party-in-interest.

61. Super Fuel is a party in interest with respect to the Fund as defined by Section 3(14)(C) of ERISA, 29 U.S.C. §1002(14)(C), because Super Fuel is an employer whose employees are covered by the Fund.

62. Upon information and belief, Bunyan transferred monies due to the Fund to Super Fuel instead of paying them to the Fund, thus breaching his fiduciary duties to the Fund under Section 406(a)(1)(D) of ERISA, 29 U.S.C. §1106(a)(1)(D).

63. Pursuant to Section 409 of ERISA, 29 U.S.C. §1109, a fiduciary who breaches any of the responsibilities, obligations or duties imposed on a fiduciary under ERISA is personally liable to a plan for any losses resulting from such breach.

## AS AND FOR A FOURTH CAUSE OF ACTION

(Against Defendant Bunyan)

64. Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 63 as if fully set forth herein.

65. Pursuant to Section 406(b) of ERISA, 29 U.S.C. §1106(b), a plan fiduciary may not use plan assets in his/her own interest or for her/his own account and may not act in any transaction involving the Fund on behalf of a party whose interests are adverse to the interests of the Fund.

66. Upon information and belief, Bunyan acted in his own interest, for his own account or on behalf of Super Fuel, whose interests are adverse to the interests of the Fund, by retaining "plan assets" or allowing "plan assets" of the Fund to be used to pay Super Fuel's debts or obligations to other parties.

67. Upon information and belief, Bunyan acted in his own interest and for his own account, whose interests are adverse to the interests of the Fund, by retaining "plan assets" or allowing "plan assets" of the Fund to be used to pay Super Fuel's and Bunyan's debts or obligations to other parties where payment had been guaranteed by Bunyan.

68.     Bunyan breached his fiduciary duties to the Fund under Section 406(b) of ERISA, 28 U.S.C. §1106(b), insofar as he retained assets of the Fund or allowed them to be used on his own behalf or on behalf of Super Fuel, both of whose interests were adverse to the interests of the Fund.

69.     Pursuant to Section 409 of ERISA; 29 U.S.C. §1109, a fiduciary who breaches any of the responsibilities, obligations or duties imposed on a fiduciary under ERISA is personally liable to a plan for any losses resulting from such breach.

70.     Plaintiffs have been required to employ the undersigned attorneys to collect monies that may be found due and owing from Defendants and are obligated to pay their attorneys a reasonable attorneys' fee.

**WHEREFORE**, Plaintiffs request that judgment be entered in favor of Plaintiffs and against Defendants, jointly and severally, as follows:

  i. For unpaid contributions to the Health Fund in the amount of $17,958 for the period from January 1, 2015 through December 31, 2015, pursuant to 29 U.S.C. §1132(g)(2)(A);

  ii. For interest on the unpaid contributions for the period January 1, 2015 through December 31, 2015 in the amount of $7,119.88, calculated from the due date of the contributions through November 30, 2018 at a rate of ten percent (10%) per annum, pursuant to 29 U.S.C. §1132 (g)(2)(B) and the Fund's governing documents;

  iii. For liquidated damages in an amount equal to the greater of (a) the total amount of interest awarded to Plaintiffs or (b) twenty percent (20%) of the total amount of unpaid contributions, pursuant to 29 U.S.C. §1132 (g)(2)(C);

  iv. For the audit costs incurred by the Fund in the amount of $740;

  v. For the costs of filing this action pursuant to 29 U.S.C. §1132 (g)(2)(D);

  vi. For reasonable attorneys' fees incurred by Plaintiffs pursuant to 29

    U.S.C. §1132 (g)(2)(D);

  vii. For post and pre-judgment interest at a rate of ten percent (10%) per annum, until Plaintiffs satisfy the judgement in full; and

  viii. For such other and further relief as this Court deems appropriate.

Dated: December 6, 2018
    New York, New York

    KLEIN ZELMAN ROTHERMEL JACOBS & SCHESS LLP

    *[signature]*

    _____
    Joan Ebert Rothermel
    David A. Gold
    485 Madison Avenue, 13th Floor
    New York, New York 10022
    (212) 935-6020
    *Attorneys for Plaintiffs*